UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

SHARYL R. RUSTAD,                    )
                                     ) No. CV-11-060-JPH
          Plaintiff,                 )
                                     ) ORDER GRANTING DEFENDANT'S
v.                                   ) MOTION FOR SUMMARY JUDGMENT
                                     )
MICHAEL J. ASTRUE, Commissioner      )
of Social Security,                  )
                                     )
          Defendant.                 )
                                     )
_____)

**BEFORE THE COURT** are cross-motions for summary judgment noted for hearing without oral argument on July 13, 2012. (ECF No. 13, 19). Attorney Maureen J. Rosette represents plaintiff; Special Assistant United States Attorney M. Thayne Warner represents the Commissioner of Social Security (defendant). The parties have consented to proceed before a magistrate judge. (ECF No. 7). On February 16, 2012, plaintiff filed a reply. (ECF No. 21). After reviewing the administrative record and the briefs filed by the parties, the court **grants** defendant's Motion for Summary Judgment

**JURISDICTION**

Plaintiff applied for supplemental security income (SSI) on July 15, 2008, alleging disability as of July 5, 2006 (Tr. 21). The applications were denied initially and on reconsideration.

Administrative Law Judge (ALJ) Marie Palachuk held a hearing on September 16, 2009 (Tr. 38-71), and issued an unfavorable decision on October 30, 2009 (Tr. 21-34). The Appeals Council denied review on January 18, 2011 (Tr. 1-5). The ALJ's October 2009 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. §

1  405(g).  Plaintiff filed this action for judicial review on
2  February 8, 2011 (ECF No. 1, 4).

3                    **STATEMENT OF FACTS**

4       The facts have been presented in the administrative hearing
5  transcript, the ALJ's decision, and the briefs of the parties.
6  They are only briefly summarized here.

7       Plaintiff was born on March 10, 1959 (Tr. 54) and was 50
8  years old on the date of the ALJ's decision.  She left school
9  after the eighth grade and has not obtained a GED (Tr. 55).  She
10  reported past work as a caregiver, housekeeper, roofer, flagger,
11  forklift operator and waitress (Tr. 55-57).  Plaintiff testified
12  that her primary problem is left leg and back pain (Tr. 58-63).
13  The record reflects that plaintiff reported to a medical
14  professional that she was not able to work due to impatience,
15  depression and anxiety (Tr. 264).  At the administrative hearing,
16  Plaintiff first stated that she last used illegal substances four
17  or five years prior to the 2009 hearing (Tr. 49).  She later
18  agreed that the last time she used methamphetamine was just prior
19  to her scheduled surgery in July 2008 (Tr. 64).

20                **SEQUENTIAL EVALUATION PROCESS**

21       The Social Security Act (the Act) defines disability as the
22  "inability to engage in any substantial gainful activity by reason
23  of any medically determinable physical or mental impairment which
24  can be expected to result in death or which has lasted or can be
25  expected to last for a continuous period of not less than twelve
26  months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also
27  provides that a Plaintiff shall be determined to be under a
28  disability only if any impairments are of such severity that a

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Thus, the definition of disability consists of both medical and vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520, 416.920.  Step one determines if the person is engaged in substantial gainful activities.  If so, benefits are denied.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  If not, the decision maker proceeds to step two, which determines whether plaintiff has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

performing work which was performed in the past.  If a plaintiff
is able to perform previous work, that plaintiff is deemed not
disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At
this step, plaintiff's residual functional capacity (RFC) is
considered.  If plaintiff cannot perform past relevant work, the
fifth and final step in the process determines whether plaintiff
is able to perform other work in the national economy in view of
plaintiff's residual functional capacity, age, education and past
work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),
416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish
a *prima facie* case of entitlement to disability benefits.
*Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v.
Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is
met once plaintiff establishes that a physical or mental
impairment prevents the performance of previous work.  The burden
then shifts, at step five, to the Commissioner to show that (1)
plaintiff can perform other substantial gainful activity and (2) a
"significant number of jobs exist in the national economy" which
plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th
Cir. 1984).

### STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a
Commissioner's decision.  42 U.S.C. § 405(g).  A Court must uphold
the Commissioner's decision, made through an ALJ, when the
determination is not based on legal error and is supported by
substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995
(9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir.

1999).  "The [Commissioner's] determination that a plaintiff is
not disabled will be upheld if the findings of fact are supported
by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572
(9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence
is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d
1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance.
*McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989);
*Desrosiers v. Secretary of Health and Human Services*, 846 F.2d
573, 576 (9th Cir. 1988).  Substantial evidence "means such
evidence as a reasonable mind might accept as adequate to support
a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)
(citations omitted).  "[S]uch inferences and conclusions as the
[Commissioner] may reasonably draw from the evidence" will also be
upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).
On review, the Court considers the record as a whole, not just the
evidence supporting the decision of the Commissioner.  *Weetman v.
Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v.
Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

     It is the role of the trier of fact, not this Court, to
resolve conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If
evidence supports more than one rational interpretation, the Court
may not substitute its judgment for that of the Commissioner.
*Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579
(9th Cir. 1984).  Nevertheless, a decision supported by
substantial evidence will still be set aside if the proper legal
standards were not applied in weighing the evidence and making the
decision.  *Brawner v. Secretary of Health and Human Services*, 839
F.2d 432, 433 (9th Cir. 1987).  Thus, if there is substantial

evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## DAA ANALYSIS

An otherwise disabled individual is not entitled to disability benefits under the Act if drug addiction or alcoholism (DAA) is a contributing factor material to disability. The Contract With America Advancement Act of 1996, Pub. L. No. 104-121 § 105(a)9C), amended the definition of disability under the Act to prohibit entitlement to disability benefits under Titles II and XVI for any individual whose disability is based on DAA. Title II of the Act now states: "An individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)©. Title XVI of the Act contains a similarly worded provision for purposes of determining eligibility for SSI disability benefits. 42 U.S.C. § 1382c(a)(30)(J).

The Commissioner's disability regulations likewise state, "if we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 416.935(a). Specifically, the "key factor" the Commissioner "will examine in determining whether drug addiction or alcoholism is a contributing

factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol." 20 C.F.R. § 416.935(b). "If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability." *Id*.

If the ALJ finds the claimant disabled and there is medical evidence of DAA, the ALJ must determine the materiality of the claimant's DAA to her disability. The ALJ must perform the sequential evaluation process a second time, separating out the impact of the claimant's DAA, to determine if she would still be found disabled if she stopped using drugs or alcohol. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). The claimant bears the burden of proving that DAA is not a contributing factor material to her disability. *Parra v. Astrue*, 481 F.3d 742, 744-745, 748 (9th Cir. 2007).

**ALJ'S FINDINGS**

At step one, the ALJ found plaintiff has not engaged in substantial gainful activity since July 15, 2008, the application date (Tr. 23). At step two, she found plaintiff had severe impairments of "T12-L1 mass, degenerative disc disease, reactive airway disease, major depressive disorder, anxiety disorder, not otherwise specified, schizoid personality disorder, and methamphetamine abuse" (Tr. 23). At step three, the ALJ found plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4 (Tr. 27).

///

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

The ALJ then assessed plaintiff's RFC including consideration
of plaintiff's substance use disorder (Tr. 29).  The ALJ
determined that plaintiff could perform light work; could
occasionally engage in stooping, climbing, crouching, and
crawling; should avoid air pollutants, and could perform routine
and repetitive tasks (Tr. 29).  The ALJ further found that she
would have several non-exertional moderate limitations as well as
marked limitations in her ability to perform activities within a
schedule, maintain regular attendance, and be punctual within
customary tolerances; work in coordination or proximity to others
without being distracted by them; complete a normal workday and
workweek without interruptions from psychologically based
symptoms; and perform at a consistent pace without an unreasonable
number and length of rest periods (Tr. 29).  The ALJ found that
plaintiff had no past relevant work (Tr. 29).  At step five, the
ALJ found that, with the inclusion of the effects of plaintiff's
substance use disorder, there are no jobs in the national economy
that plaintiff can perform (Tr. 30).  However, the ALJ then made
the finding that, if plaintiff stopped using drugs, she would have
the RFC to perform light work; could occasionally engage in
stooping, climbing, crouching and crawling; should avoid air
pollutants; is capable of performing routine and repetitive tasks;
is capable of routine changes in the work environment; and is
limited to occasional or superficial contact with the general
public or with coworkers (Tr. 31).  The ALJ concluded that, if
plaintiff stopped substance use, considering her age, education,
work experience and RFC, and based on vocational expert testimony,
there are jobs that exist in significant numbers in the national

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

economy that she can perform (Tr. 33). The ALJ determined that
because plaintiff would not be disabled if she stopped the
substance use, plaintiff's substance use disorder is a
contributing factor material to the determination of disability,
and; therefore, plaintiff has not been disabled within the meaning
of the Social Security Act at any time from the date the
application was filed through the date of her decision (Tr. 33).
The ALJ found that plaintiff was not disabled under Section
1614(a)(3)(A) of the Act (Tr. 34).

**ISSUES**

Plaintiff alleges the ALJ erred because the substantial
weight of the record evidence supports a more limited mental RFC
determination. (ECF No. 14 at 8-11). Plaintiff specifically
argues that the ALJ failed to properly reject the opinions of
certain medical sources when determining her mental RFC. *Id*.
Plaintiff also contends the ALJ erred because she is more limited
from a physical standpoint than as assessed by the ALJ in this
case. (ECF No. 14 at 11-13).

Defendant asserts the ALJ's psychological evaluation,
including her evaluation of plaintiff's methamphetamine abuse, was
supported by substantial evidence (ECF No. 20 at 8-13) and the
ALJ's assessment of plaintiff's physical limitations was supported
by substantial evidence (ECF No. 20 at 14-17).

**DISCUSSION**

**A. Mental Limitations**

The ALJ concluded that if plaintiff stopped her substance
abuse, she would be able to perform a limited range of light
exertion level work with the following non-exertional limitations:

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

she should avoid air pollutants, she is capable of performing routine and repetitive tasks, she is capable of routine changes in the work environment, and she is limited to occasional or superficial contact with the general public or with coworkers (Tr. 31).  The non-exertional limitations assessed by the ALJ are supported by the opinions of reviewing medical consultants, Drs. Gentile and Kraft, who were cognizant of documented recent methamphetamine use by plaintiff.

On August 12, 2008, Mary A. Gentile, Ph.D., reviewed the record and completed a Mental Residual Functional Capacity Assessment form (Tr. 294-296).  Dr. Gentile determined plaintiff was either not significantly limited or moderately limited in all areas of mental functioning (Tr. 294-295).  She concluded plaintiff was able to understand, remember and carry out simple, routine tasks; would occasionally have slowed concentration due to her symptoms or methamphetamine use; would work best away from the general public; would be able to have superficial contact with co-workers; would need extra time to adapt to change; and would be able to travel, avoid hazards and set goals (Tr. 296).  Dr. Gentile noted plaintiff had not been truthful regarding her methamphetamine use and that her anxiety may be a manifestation of chronic methamphetamine use (Tr. 310).  On November 12, 2008, Patricia Kraft, Ph.D., affirmed Dr. Gentile's assessment (Tr. 320).

Plaintiff argues that limitations assessed by Amy Robinson, M.S., under the supervision of W. Scott Mabee, Ph.D., and medical expert Stephen Rubin, Ph.D., reflect greater restrictions from a psychological standpoint than assessed by the ALJ and the ALJ

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

erred by not according these medical professionals greater weight. (ECF No. 14 at 8-11).

Ms. Robinson, under the supervision of Dr. Mabee, examined plaintiff on April 14, 2008, as part of plaintiff's application for Washington state social services benefits (Tr. 260-270). Ms. Robinson diagnosed Major Depressive Disorder, Single Episode, Severe without Psychotic Features; Anxiety Disorder, NOS; and Schizoid Features (Tr. 267). Plaintiff was given a GAF score of 45-50[1] (Tr. 267). Ms. Robinson additionally filled out a Psychological/Psychiatric Evaluation form and checked boxes indicating that plaintiff had marked limitations in her abilities to exercise judgment and make decisions, relate appropriately to co-workers and supervisors, interact appropriately in public contacts, respond appropriately to and tolerate the pressures and expectations of a normal work setting, and control physical or motor movements and maintain appropriate behavior (Tr. 262). Significantly, plaintiff reported to Ms. Robinson that she last used methamphetamine three years prior to the April 2008 evaluation (Tr. 266).

The ALJ did not reject Ms. Robinson's opinions, but rather placed them in the context of the record as a whole. While plaintiff reported to Ms. Robinson that she last used methamphetamine three years prior to the April 2008 evaluation

---

[1]A GAF of 50-41 reflects: "[s]erious symptoms (e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS-IV 32 (4th ed. 1994).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

(Tr. 266), it is clear from the record that plaintiff was using methamphetamine at the time of Ms. Robinson's examination (Tr. 282).[2]   It is thus apparent that the limitations assessed by Ms. Robinson reflect plaintiff's condition while she was using drugs. The ALJ's RFC assessment which considered plaintiff's substance use included several non-exertional limitations consistent with the opinions of Ms. Robinson (Tr. 29).[3]

    The same is true with respect to the limitations assessed by Dr. Rubin.  Dr. Rubin testified as a medical expert at the administrative hearing held on September 16, 2009 (Tr. 43-53).  He indicated that there were past concerns with drug use, but he did not see evidence of current drug use with a recent psychological evaluation[4] (Tr. 45).  At the September 2009 administrative hearing, Dr. Rubin asked plaintiff when she last used illegal substances (Tr. 49).  Plaintiff reported it had been four or five years since she last used methamphetamine (Tr. 49).  However, the ALJ then indicated that the record reflected plaintiff had used

_____

    [2]On July 22, 2008, plaintiff admitted to David Gruber, M.D., that she had used methamphetamine the previous night and had been using the substance for more than six months (Tr. 282).

    [3]The ALJ determined that, with the inclusion of plaintiff's substance abuse disorder, she would have several non-exertional moderate limitations as well as marked limitations in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms; and perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 29).

    [4]The psychological evaluation Dr. Rubin refers to is that of Ms. Robinson.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

methamphetamine as recently as July 2008 (Tr. 49).  Dr. Rubin

stated that, based on this information, "it leaves open the

question . . . whether or not there is a substance addiction

disorder." (Tr. 49-50).

Dr. Rubin opined that plaintiff would have a mild restriction

of daily living, a moderate difficulty in maintaining social

functioning, at least a moderate difficulty in concentration,

persistence and pace and no episodes of decompensation (Tr. 50).

Dr. Rubin testified that plaintiff had marked limitations in her

abilities to perform activities within a schedule and maintain

regular attendance, work in coordination and in proximity with

others without being distracted, and complete a normal workday and

work week without interruption from psychologically based symptoms

(Tr. 51).  Dr. Rubin testified that his assessment was based on

psychological issues and not drug-related issues (Tr. 52).

Dr. Rubin never examined or treated plaintiff (Tr. 44).  He

merely reviewed the record and based his opinions on the

information he discerned therefrom.  Not only was Dr. Rubin

mislead by plaintiff's statement at the administrative hearing

that she had not used methamphetamine for four or five years (Tr.

49), but also by his reliance on Ms. Robinson's report (Tr. 45)

which indicated plaintiff last used methamphetamine three years

prior to her April 2008 evaluation (Tr. 266).  As indicated above,

the record reflects that Plaintiff used methamphetamine in July

2008 and that she had been using for more than six months prior to

that time (Tr. 282).  Dr. Rubin's assessment was based on

psychological issues and not drug-related issues (Tr. 52),

because, as he stated, although there were past concerns with drug

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

use, he discovered no evidence of current drug use in his review (Tr. 45).  The undersigned finds that, like Ms. Robinson, Dr. Rubin based his opinions on the mistaken belief that plaintiff had not used methamphetamine for years.  Consequently, it was reasonable for the ALJ to find that Dr. Rubin's assessment failed to account for plaintiff's methamphetamine use (Tr. 29).

The substantial weight of the record evidence supports the ALJ's mental RFC determination which reflects plaintiff's functioning while using methamphetamine (Tr. 29) as well as if she stopped using the substance (Tr. 31).  Accordingly, the ALJ did not err in this regard.

**B. Physical Limitations**

Plaintiff also asserts the ALJ erred by finding she has the RFC to perform light exertion level work activities.  (ECF No. 14 at 11-13).  Plaintiff contends that the opinions of Drs. Shanks and Gruber reflect that she has greater restrictions from a physical standpoint than those assessed by the ALJ.  *Id*.

William M. Shanks, M.D., examined plaintiff on May 20, 2008 (Tr. 248-250).  Earlier x-rays showed evidence of degenerative disc changes at the L4-5 and LS levels, and a recent MRI showed evidence of a tumor extending from T12 to the L1 level (Tr. 250). Dr. Shanks diagnosed degenerative disc disease and nerve root irritations.  He contacted neurosurgeon David P. Gruber, M.D., for further direction and stated that plaintiff "would not be capable of work until the exact nature of her condition is known."  *Id*.

Dr. Gruber examined plaintiff on June 30, 2008 (Tr. 290-293). Plaintiff reported to Dr. Gruber that on average her pain is an 8 or 9 on a pain scale from 0 to 10 (Tr. 290).  Nevertheless,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

plaintiff indicated she was able to participate in the majority of her day-to-day activities without difficulty (Tr. 290).  Dr. Gruber noted that while plaintiff appeared somewhat uncomfortable, she was in no acute distress (Tr. 292).  His examination did not reveal significant limitations (Tr. 292), and he did not specifically restrict plaintiff's activities.

Plaintiff followed up with Dr. Gruber on July 9, 2008 (Tr. 284-285).  Dr. Gruber recommended surgery; however, on the day of the scheduled surgery, July 22, 2008, plaintiff admitted to using methamphetamine the previous night and indicated she had been using for more than six months (Tr. 282).  The surgery was cancelled and plaintiff was discharged as a patient.  *Id*.

On August 12, 2008, Gloria Marshall, a disability determination examiner, completed a physical residual functional capacity assessment (Tr. 312-319).  Ms. Marshall opined that plaintiff could perform light exertion level work[5] with some postural and environmental limitations (Tr. 313-316).  Ms. Marshall noted that plaintiff's credibility was reduced due to her history of methamphetamine use and the denial of such use (Tr. 317).  She commented that Dr. Shanks opinion was not given controlling weight because it was given for GAU purposes[6] and was not fully supported by the record evidence (Tr. 318).

_____

[5]Light level work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighting up to 10 pounds.  20 C.F.R. §§ 404.1567(b), 416.967(b).

[6]When a physician is involved in the application process, thus becoming an advocate for the claimant, an ALJ is entitled to consider this factor in evaluating his testimony.  *Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

On November 18, 2008, Alfred Scottolini, M.D., affirmed the residual functional capacity assessment completed by Ms. Marshall on August 12, 2008, finding it was "substantially and tech[nically] correct" (Tr. 321).  Dr. Scottolini noted that plaintiff's spinal tumor was "obviously benign and very likely a neurofibroma"[7] (Tr. 321).

Contrary to plaintiff's argument, the ALJ did not rely on the opinion of a non-doctor (Ms. Marshall).  The ALJ based her physical RFC determination on Dr. Scottolini's opinion (Tr. 32), which incorporates Ms. Marshall's assessment by reference (Tr. 321).  The ALJ did not err by relying on Dr. Scottolini's opinion in this regard.

With respect to Dr. Shanks' indication that plaintiff was severely limited and "would not be capable of work until the exact nature of her condition is known," this is not a statement that plaintiff would be continuously limited in this manner for 12 consecutive months, *see* 42 U.S.C. § 1382c(a)(3)(A), just that she should not work temporarily (until the condition was more thoroughly investigated).  Dr. Shanks referred plaintiff to Dr. Gruber who did not find significant work-related limitations on exam (Tr. 32, 292).  His examination was significant only for mild spasm and somewhat slow and antalgic gait, with "diffusely muted" sensation in the left lower extremity, and "slight, generalized decrease in strength in the left lower extremity" (Tr. 32, 292).

_____

[7]Neurofibromas are benign tumors consisting of Schwann cells and neural fibroblasts.  THE MERCK MANUAL 2377 (18th ed. 2006).  Treatment consists of surgical removal or irradiation. *Id.* at 2378-2379.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

Therefore, as indicated by the ALJ, Dr. Shanks' opinion that plaintiff was severely limited is inconsistent with the reports of Dr. Gruber.

Plaintiff's contention that the ALJ failed to accord weight to Dr. Gruber's indication that plaintiff's average pain is an 8 or 9 on a pain scale from 0 to 10 (Tr. 290) also lacks merit. Plaintiff reported this level of pain to Dr. Gruber. Subjective complaints to a doctor are not medical opinions from that doctor. Moreover, the ALJ found that plaintiff's subjective complaints regarding the extent of her functional limitations were not fully credible in this case (Tr. 31), and plaintiff does not contest this determination. A physician's opinion may be disregarded when it is premised on the properly rejected subjective complaints of a plaintiff. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). This reported level of pain is further inconsistent with plaintiff's report to Dr. Gruber that she was able to participate in the majority of her day-to-day activities without difficulty (Tr. 290).

Based on the foregoing, the undersigned finds that the ALJ's physical RFC determination is in accord with the weight of the record evidence. The record does not support a more restrictive finding than Plaintiff being restricted to work at the light exertion level. Accordingly, the ALJ did not err in so finding in this case.

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision is free of legal error and supported by substantial evidence. Accordingly,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

**IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment (**ECF No. 19**) is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment (**ECF No. 13**) is **DENIED.**

**IT IS SO ORDERED.**   The District Court Executive is directed to file this Order, provide copies to the parties, enter judgment in favor of Defendant, and **CLOSE** this file.

**DATED** this 1st day of August, 2012

                                    S/James P. Hutton
                                  JAMES P. HUTTON
                          UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18